IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY R. HILL, ) <br> ) <br> Claimant, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Respondent. ) | No. 1:16-CV-00523 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Claimant Kimberly R. Hill ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for disability insurance under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.]

Pursuant to Federal Rule of Civil Procedure 56, the parties filed cross-motions for summary judgment. [ECF No. 18; ECF No. 22.] For the reasons stated below, Claimant's Motion for Summary Judgment is granted, and the Commissioner's Motion for Summary Judgment is denied. The decision of the Commissioner is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income on May 6, 2011, alleging a disability onset date of January 1, 2010. (R. 32-33, 87.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 34.) At a hearing held by an Administrative Law Judge ("the ALJ") on June 11, 2013, Claimant appeared without representation and testified. (R. 360-395.) A Vocational Expert ("the VE") also testified. (R. 393-400.)

On September 19, 2013, the ALJ issued a written decision denying Claimant's applications for benefits based on a finding that, from her alleged onset date through the date of the decision, she was not disabled under the Social Security Act. (R. 21-31.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. §§ 404.1520(a) and 416.920(a). (*Id.*) At step one, the ALJ reserved her ruling on whether the Claimant engaged in substantial gainful activity since her alleged onset date of January 1, 2010. (R. 23.) At step two, the ALJ found that Claimant had the severe impairments of sarcoidosis, asthma, obesity, hypertension, gastroesophageal reflux disease ("GERD"), and intermittent left ankle pain/swelling. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (R. 24.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with the following limitations: occasionally stoop, crawl, crouch, climb, and kneel. (*Id.*) The ALJ went on to limit the Claimant's exposure to dust, odors, fumes, and gases. (*Id.*) Based on this RFC

determination and the testimony of the VE, the ALJ concluded at step four that Claimant was capable of performing her past relevant work as a compiler, mail clerk, telephone solicitor, and hair braider. (R. 30.) The ALJ also found that Claimant was capable of performing past relevant work as a recreation supervisor and arranger as generally performed in the economy. (*Id.*) Her decision further indicates that these jobs did not require the performance of work-related activities precluded by the Claimant's RFC. (*Id.*) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (*Id.*)

The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 4-8.); *see Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the

conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant argues that the following errors committed by the ALJ mandate remand. She contends that the ALJ erred in her decision to deny Claimant benefits because (1) the ALJ did not obtain a valid waiver of counsel and failed to adequately develop the record; (2) the ALJ's assessment of Claimant's RFC was insufficient; (3) there was no evidence that Claimant could perform past relevant work; and (4) Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were credible.[2] The Court finds that the ALJ committed

---

[2] Claimant notes that the ALJ did not make any finding at step one, but, rather, reserved the issue of whether Claimant engaged in SGA after her alleged onset date. Claimant does not argue that this decision merits remand. Instead, Claimant says, and the Commissioner agrees, that the only effect of the ALJ's reservation is that the Court should assume Claimant did not engage in SGA. *See Harris v. Barnhart*, 2004 U.S. Dist. LEXIS 23316, at *23 (N.D. Ill. Aug. 17, 2004).

4

the first and second errors. Because of these findings, the Court need not address whether the ALJ committed the third and fourth errors.

### A. The ALJ Obtained a Valid Waiver of Counsel

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. A claimant may waive this right if he is given sufficient information that would enable him to decide whether or not to obtain counsel. *Slaughter v. Barnhart*, 2006 U.S. Dist. LEXIS 63555, at *9 (N.D. Ill. July 21, 2006). For a waiver of counsel to be valid the Commissioner must explain (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to twenty-five percent of past due benefits and required court approval of the fees. *Smith v. Astrue*, 795 F. Supp. 2d 748, 758 (N.D. Ill. 2011) (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)).

Claimant contends that the ALJ failed to explain how a representative could aid in her case and hearing. The Commissioner responds in several ways. First, she argues that Claimant was provided sufficient information that enabled her to decide whether or not she should obtain counsel. Specifically, the Commissioner refers to a two-page document that was sent to Claimant before the hearing entitled, "Your Right to Representation." (R. 56-57, 69-70.) This Form included a list of five ways in which a representative could aid a claimant, and explained the possibility of free counsel or a contingency arrangement: "Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits." (R. 56, 69.) The document also made it clear that a representative could not charge a fee without SSA approval and that the agency would only approve a fee agreement if "[t]he fee you agreed on is no more than 25 percent of past-due

5

benefits or $6,000, whichever is less." (R. 57, 70.) Next, the Commissioner contends that Claimant signed an "Acknowledgement of Receipt (Notice of Hearing)," thereby verifying her receipt of both the Notice of Hearing and the enclosures listed at the end of the Notice, which included the Your Right to Representation Form. (R. 76.) Finally, the Commissioner argues that Claimant told the ALJ that she received these forms. (R. 361.) In her reply brief, Claimant highlights the fact that the address the SSA had on file for her was incorrect, and claims that she did not receive any of the correspondence from the Administration, except for the Notice of Hearing.

The parties' argument about the validity of Claimant's waiver of her right to counsel comes down to a narrow factual dispute. Claimant does not dispute the Commissioner's assertion that the Right to Representation Form provides sufficient information to secure a valid waiver. And the Commissioner does not dispute—it "assumes"—that the conversation between the ALJ and Claimant at the hearing was, on its own, inadequate for a valid waiver. The parties also do not dispute that the SSA actually mailed two Right of Representation Forms.[3] The sole conflict with respect to the issue of the validity of the waiver is whether the record establishes that Claimant actually received either of those forms.[4]

Claimant testified that there was an issue with her mailing address. (R. 366-67.) At the start of the hearing, the ALJ asked Claimant if the address on file—8920 Lacrosse, Skokie, Illinois—was correct. (R. 366.) Claimant told the ALJ this address was incorrect. (*Id.*) Prior to this, Claimant confirmed that she received the "Notice of Hearing" and the "list of attorney

---

[3] Claimant argues, and the Commissioner does not dispute, that merely mailing a form with the requisite information is not enough because the record must show that she actually received the form. *See Goo v. Colvin*, 2016 U.S. Dist. LEXIS 83540, at *12-13 (N.D. Ill. June 28, 2016).

[4] Although the record includes a variety of forms sent by the SSA, the Commissioner's argument with respect to the validity of Claimant's waiver focuses solely on the Right to Representation forms.

referral agencies, and legal aid agencies, . . . ." that were sent to her. (R. 360-61.) When the ALJ asked Claimant how she received the Notice of Hearing, Claimant responded by saying, "I got - - it came to my address." (R. 366.) Claimant went on to state, "I think one of my records ha[s] my correct address." (*Id.*) She further confirmed her correct address as 4832 Conrad Street, Apt. 2N, Skokie, Illinois, 60077. (R. 366-67.)

The record indicates that the SSA sent Claimant two letters. (R. 53-62, 63-75.) The first letter, dated August 6, 2012, which was addressed to Claimant's 8920 Lacrosse, Apt. 2E address in Skokie, Illinois, explained the hearing process, and included an Important Notice Regarding Representation, which contained a list of attorney referral agencies and legal aid agencies, and a Your Right to Representation Form. (R. 53-62.)[5] The second letter, dated May 17, 2013, which was addressed to Claimant's 4832 Conrad Street, Apt. 2N address in Skokie, Illinois, was the actual Notice of Hearing, and included, among other things, a Your Right to Representation Form, and an Acknowledgement of Receipt (Notice of Hearing). (R. 63-75.) Claimant testified that the 4832 Conrad Street, Apt. 2N address in Skokie, Illinois was her correct address. (R. 366-67.)

In addition, the record indicates that Claimant signed and dated an Acknowledgment of Receipt (Notice of Hearing) on May 29, 2013. (R. 76.) The Acknowledgment of Receipt was listed as one of four enclosures on the Notice of Hearing letter dated May 17, 2013 that the SSA mailed to Claimant. (R. 67.) Also listed as an enclosure on that Notice was a Your Right to Representation Form. (*Id.*) This was the second Your Right to Representation Form that the SSA sent to Claimant. (R. 55, 67.) This form accompanied the Notice of Hearing that was

---

[5] Although Claimant testified that this address was incorrect, she confirmed at the hearing that she had received the "list of attorney referral agencies, and legal aid agencies." (R. 360-61, 366.) The Court notes that the second letter did not include the Important Notice Regarding Representation, which contained a list of attorney referral agencies.

7

addressed to Claimant's 4832 Conrad Street, Apt. 2N address in Skokie, Illinois, which was the address that Claimant confirmed to be correct. (R. 63-70.) Claimant's testimony indicates that she may have received the Right to Representation Form. The fact that the record contains a signed Acknowledgment of Receipt (Notice of Hearing) shows that Claimant received the Notice of Hearing and the Right of Representation Form that was sent with the Notice of Hearing.

In light of this evidence, the Court concludes that the record shows Claimant received at least one of the Right to Representation Forms, and, therefore, the ALJ secured a valid waiver. For the reasons explained below, however, the Court still finds that remand is appropriate in this case.

### B. The ALJ's RFC Analysis is Not Supported by Substantial Evidence in a Fully and Fairly Developed Record

An ALJ has a duty to develop a full and fair record. *Martin v. Astrue*, 345 F. App'x 197, 201 (7th Cir. 2009). Because of this duty, an ALJ must ensure the record contains, at minimum, enough information to assess the claimant's RFC and to make a disability determination. *Id.* "Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). But courts generally uphold the Commissioner's judgment about how much evidence to gather. *Nelms*, 553 F.3d at 1099. Remand is appropriate only where an ALJ's decision not to gather evidence either prejudiced the claimant or left an evidentiary gap. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). That resulting prejudice or gap generally must be significant. *Giebudowski v. Colvin*, 981 F. Supp. 2d 765, 775 (N.D. Ill. 2013). To carry her burden, a claimant must identify what specific, relevant facts an ALJ did not to consider. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1143 (N.D. Ill. 2012).

To assess an individual's RFC, the ALJ must determine "what [an] individual can still do despite his or her limitations" "based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family." SSR 96-8p, 1996 SSR LEXIS 5; *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). An ALJ's RFC determination must account for all of Claimant's limitations, even those that are not severe. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014). Further, an RFC assessment must be supported by substantial evidence. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Claimant contends that the ALJ failed to develop the record, and that her RFC findings are not supported by substantial evidence. The only medical opinions upon which the ALJ relied to assess Claimant's RFC are three state evaluations, two completed by Dr. Ernst Bone, M.D. and the other by Dr. Charles Kenney, M.D. (R. 172-77, 278-280.) In her decision, the ALJ concludes that these evaluations support a finding of "not disabled." (R. 29.) She gave the opinions of the state agency consultants some weight. (*Id.*)

Despite the ALJ's reliance on the state agency evaluations, they do not provide substantial support for the ALJ's RFC. In Dr. Bone's first evaluation, he noted Claimant had "marked obstructive airway changes in the lower lung fields . . . ." (R. 172-74.) He said that the agency should "[c]onsider" whether Claimant "equals listing 3.02A." (R. 174.) As Dr. Bone explained, Claimant's FEV1 levels were below the listing level on two tests and above the level on one. (*Id.*) In light of Claimant's "history of sarcoidosis, asthma, requiring multiple visits to the ER for her condition," Dr. Bone said "an equals is appropriate." (*Id.*) Dr. Bone never opined in any other manner as to Claimant's physical or mental capabilities. Ultimately, though, he

9

concluded that additional review was required to determine whether she did meet Listing 3.02A. (R. 172.)

In the next evaluation, Dr. Kenney reported that the test reporting above listing-level FEV1 was based upon the wrong height for Claimant—5'10" instead of 5'9"—and "Claimant's 2009 allowance was based upon [a] listing level total vital capacity" that "was a pre-med level, not a post med level." (R. 177.) Dr. Kenney said that additional tests were requested to deal with these issues. (*Id.*) However, the agency could not reach Claimant by phone because all of the numbers they had on file for her were out of order. (*Id.*) The agency mailed her various reminder letters, but it is not clear whether Claimant received them. (*Id.*) The only clear success the agency had in reaching Claimant was a call to an unidentified "third party" who said that she would tell Claimant to schedule the necessary test. (*Id.*) Ultimately, though, the testing was never done. Dr. Kenney concluded that he could not "establish[]" Claimant's "[c]redibilty . . . due to [her] failure to cooperate" and he proposed that her claim be denied for this reason alone. (R. 175, 177). Dr. Kenney did not recommend that Claimant's claim be denied because of insufficient evidence or because she did not have a disabling impairment. (R. 175). Further, as with the first evaluation, Dr. Kenney did not opine in any other manner about Claimant's physical or mental capabilities. (R. 175-177.)

In the last evaluation, Dr. Bone repeated the findings that were contained in Claimant's prior assessments. (R. 280.) He reported that Claimant was again requested to undergo additional testing, which she failed to attend, despite reminders and calls made to her and "collaterals." (*Id.*) Dr. Bone noted that Claimant missed her first appointment because she was in the hospital. (*Id.*) He also reported that Claimant was sent a due process letter to which she did not respond. (*Id.*) Dr. Bone concluded "[T]he medical evidence of record [did] not support a

10

favorable decision without needed testing[,] nor [did] it support the [Claimant's] report of incapacity." (R. 280.) He further noted that no medical source statement was received, and as a result, no controlling weight was given. (*Id.*) In addition, Dr. Bone found that Claimant's credibility could not be established due to her failure to cooperate. (*Id.*) Like Dr. Kenney, Dr. Bone did not deny Claimant's claim because she did not have a disabling impairment. (*Id.*) Rather, he closed her claim because she failed to cooperate. (R. 278, 280.)

As stated above, the ALJ said these evaluations supported the Claimant's RFC. (R. 29.) As the Court's discussion shows, these opinions do not support the RFC. Crucially, they do not opine as to Claimant's physical and mental abilities. With respect to the 3.02A issue, the evaluations indicate that there is evidence supporting that listing. While they raise questions about that evidence, the consultants' thought the supportive evidence was not so deficient as to merit an immediate conclusion that Claimant did not equal the listing, but, rather, justified additional testing. The only reason the state agency consultants ultimately rejected Claimant's claim was because she did not show up for additional testing. Regardless, it is clear that the consultants' did not find that Claimant had the mental and physical capabilities that are contained in her RFC.

The Court recognizes that a claimant's failure or refusal to take part in a consultative examination or test, if not justified by a good reason, may support a finding that the claimant is not disabled or is not credible. 20 C.F.R. § 404.1518; *Callins v. Apfel*, 202 F.3d 281 (10th Cir. 2000); *Cotton v. Colvin*, 2017 WL 914617, at *5 (D. Ariz. Mar. 8, 2017); *Matta v. Colvin*, 2016 WL 524652, at *9-10 (S.D.N.Y. Feb. 8, 2016); *Dawson v. Colvin*, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014). The Commissioner, however, did not argue in this case that the ALJ's decision should be affirmed because of Claimant's failure or refusal to cooperate with Dr.

Kenney and Dr. Bone. Moreover, the ALJ did not rely on Claimant's lack of cooperation as a basis for finding Claimant was not disabled, which means the Commissioner would be precluded from raising this issue under the *Chenery* doctrine. *Richey v. Colvin*, 2014 WL 4080156, at *2 n.4 (E.D. Wis. Aug. 18, 2014).

The Commissioner offers a very weak defense in response to the ALJ's RFC determination. In one, short paragraph, the Commissioner recites various medical facts and record cites included in the ALJ's decision. The Commissioner does not explain how these facts and cites demonstrate that the ALJ's RFC analysis was supported by substantial evidence. Moreover, the Commissioner does not identify any medical opinion that actually supports the ALJ's RFC determination. The Commissioner also does not directly address many of the arguments set forth by Claimant.

In this case, the ALJ's RFC determination is not supported by any medical opinion in the record to which she gave weight. The ALJ relied on a record that lacked a medical opinion assessing Claimant's functional abilities based on her mental and physical limitations. To fill in this gap, the ALJ must have resorted to lay speculation, as there is no medical opinion for her to have relied upon. This was improper. *Smith*, 231 F.3d at 437; *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (finding that an ALJ impermissibly "indulged his own lay view" of the case by failing to ground his opinion "on any medical evidence or authority"); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). ("We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so.") Therefore, this case must be remanded.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 18] is granted and the Commissioner's Motion for Summary Judgment [ECF No. 22] is denied. The decision of the Commissioner is remanded.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 16, 2017